Filed 1/29/15  P. v. Thornton CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER THORNTON,<br><br>    Defendant and Appellant. | B252575<br><br>(Los Angeles County<br>Super. Ct. No. BA411138) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Anne H. Egerton, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher Thornton appeals his conviction of making criminal threats against a neighbor. He contends the trial court committed prejudicial error in blocking his efforts to impeach the credibility of the alleged victim based on her mental incapacity, history of drug use, and attempt to shield her boyfriend from blame in the incident that triggered the alleged threats. We find no merit in these contentions and affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

Because this is an unreported opinion and the parties are familiar with the facts we will dispense with their recitation here. To the extent they are relevant, the facts are discussed in our resolution of the issues below.

## DISCUSSION

The alleged victim, Olivia Thurman, testified that during an argument between defendant Thornton, her boyfriend Josh Miller and her, defendant Thornton struck her with a mop handle and said to her: "Do you know who you're talking to? I'm B.P.S. You will die."[1] A short time later, Thurman testified, Thornton again told her: "'I'm Black P Stones,' and [you] will die." A jury acquitted Thornton of assault with a mop handle but convicted him of one count of making criminal threats.

 Thurman was the only witness to testify to the alleged threats and Thornton attempted to impeach her credibility.

Thornton asked Thurman whether her boyfriend, Miller, was present during the argument in violation of a domestic violence restraining order obtained by her. The court sustained the prosecutor's objection to the question on the grounds of relevancy. Thornton argues the question was relevant to show that Thurman would lie to the police about who assaulted her that day in order to protect her boyfriend who had a history of domestic violence. Thurman did admit, however, that "I have a domestic violence case against my boyfriend" and that she did not tell the police that Miller was in her apartment when the altercation between her and Thornton took place. We see no relevance to this inquiry. In any case, the jury was informed that Thurman had a domestic violence case

---

[1]     The letters B.P.S. stand for Black P. Stones, a Los Angeles street gang.

against Miller and that Thurman hadn't reported Miller's presence at the altercation to the police.  From this the jury could infer that Thurman was trying to protect her boyfriend.

Thornton also asked permission to question Thurman about her mental condition on the day of the incident based on information Thornton obtained that showed Thurman had been under treatment at a facility that only deals with "severe mental disorders" such as paranoia, schizophrenia, bipolar disorder and severe depression.  The court denied Thornton leave to examine Thurman about her mental disorders based on Evidence Code section 352.  We cannot say that the court abused its discretion.  "'A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem.'  [Citation.]"  (*People v. Anderson* (2001) 25 Cal.4th 543, 579.)  Thornton produced no evidence showing a connection between Thurman's unspecified mental disorder and her ability to perceive and remember events or that Thurman suffered from that mental disorder at the time the events took place or at the time of trial.  Nor did he make an offer of proof that a qualified individual would testify to what mental condition Thurman suffered at the time of the incident or at the time of trial or, assuming that Thurman would identify her own condition, that such condition could affect Thurman's ability to perceive and remember events or to testify about them.

Finally, Thornton complains that he was not allowed to examine Thurman about her "drug addiction."  In her testimony, Thurman stated that before the incident with Thornton she had been planning to go into a drug treatment program "not because I'm a drug addict" but because she found a treatment program that would allow her son, who was in foster care, to live with her part of the time.  The court allowed Thornton to question Thurman about whether she had used any drugs or alcohol on the day of the incident or before coming to court but would not allow him to attempt to impeach Thurman's testimony that she was not a "drug addict."  The court reasoned that being a drug addict or being convicted for "simple possession of narcotics is not a crime of moral turpitude" for impeachment purposes.  The court did not abuse its discretion in disallowing examination in this area.

3

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.


                                        ROTHSCHILD, P. J.

We concur:


        JOHNSON, J.


        BENDIX, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.